**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**George MOSTELLA,**
**Defendant-Appellant.**

No. 85–1120.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 9, 1985.

Decided Oct. 15, 1986.

Rudy Orjales, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

A.J. Kramer, Asst. Federal Public Defender, San Francisco, Cal., for defendant-appellant.

Before WRIGHT, KENNEDY, and BEEZER, Circuit Judges.

KENNEDY, Circuit Judge:

Appellant George Mostella was convicted of unarmed bank robbery in violation of 18 U.S.C. § 2113(a). He argues that there was insufficient evidence of his sanity to convict him, and that he was denied a fair trial because of prosecutorial and judicial misconduct. We affirm his conviction.

Mostella's sole defense was insanity. His insanity defense rested on evidence that at the time of the robbery he was suffering from schizophrenia, and as a consequence could not conform his conduct to the law. Testimony focusing solely on whether Mostella could appreciate the wrongfulness of his conduct was not received; apparently, the district court made it clear to Mostella's counsel that if he attempted to argue that Mostella could not appreciate the wrongfulness of his conduct, the court would admit evidence of a prior bank robbery and the psychiatric reports prepared in connection with it.

Mostella now argues that the record was completely barren of evidence showing that he could appreciate the wrongfulness of his conduct, as required under the insanity test applicable at the time of the offense. Under that test, a person is insane if "as a result of a mental disease or defect, [he] lacks substantial capacity to appreciate the wrongfulness of his conduct *or* to conform his conduct to the requirements of the law." *United States v. Smeaton,* 762 F.2d 796, 799 (9th Cir.1985) (quoting *United States v. Henderson,* 680 F.2d 659, 661 (9th Cir.1982)).

The government contends that there was sufficient evidence of sanity to support Mostella's conviction. Specifically, it argues that the jury could have found that Mostella did not suffer from a mental disease at all, or, that even if he did, the disease did not prevent him from appreciating the wrongfulness of his actions. We must accept the government's position if, after evaluating the evidence in the light

most favorable to the prosecution, we determine that "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Lane,* 765 F.2d 1376, 1381 (9th Cir.1985) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).

■ In this case Dr. Kessler testified that Mostella did not suffer from paranoid schizophrenia, expressly disagreeing with the conclusions of Dr. Rosenthal, the defense psychiatrist, and a 1971 Army psychiatric report. In particular Dr. Kessler found the Army report too general to support a diagnosis of schizophrenia, noting that the specific behavioral symptoms described in the report, such as ambivalence, inability to concentrate, and difficulty with interpersonal relationships did not necessarily suggest paranoid schizophrenia. Moreover, on the basis of his own investigations, Dr. Kessler concluded that Mostella did not exhibit the classic symptoms of the disorder, such as persecutorial or grandiose delusions. Given that the resolution of conflicting expert testimony is generally for the jury, *Smeaton,* 762 F.2d at 798; *United States v. Schmidt,* 572 F.2d 206, 208 (9th Cir.1977), a reasonable jury could have accepted Dr. Kessler's testimony and found Mostella sane beyond a reasonable doubt. In accepting Dr. Kessler's testimony regarding Mostella's sanity, the jury would necessarily have found that paranoid schizophrenia did not prevent Mostella from appreciating the wrongfulness of his conduct.

Even if a jury, on the basis of Dr. Kessler's testimony, could not find beyond a reasonable doubt that Mostella understood the wrongfulness of his conduct, there is other evidence in the record from which a jury could reach the same conclusion. *See United States v. Fortune,* 513 F.2d 883, 890 (5th Cir.) (expert testimony not necessary to discharge government's burden of proof on sanity issue), *cert. denied,* 423 U.S. 1020, 96 S.Ct. 459, 46 L.Ed.2d 393 (1975). In particular, Mostella's attempts to divert the police through the false rob-

bery report, his modest efforts to conceal himself during the robbery, and even his claim not to remember the robbery and his suggestion that he may have been in Oakland at the time, all could be taken by the jury to evidence consciousness of the wrongfulness of his act. *Cf. United States ex rel. Foster v. DeRobertis,* 741 F.2d 1007, 1014 (7th Cir.1984) (evidence of sanity in form of attempts at concealment sufficient to show defendant was aware of the wrongfulness of his conduct), *cert. denied,* 469 U.S. 1193, 105 S.Ct. 972, 83 L.Ed.2d 975 (1985); *United States v. Ming Sen Shiue,* 650 F.2d 919, 923 (8th Cir.1981) (evidence of concealment relevant to prove sanity); J. Wigmore, *Evidence in Trials at Common Law* § 276 (Chadbourn rev. ed. 1979) (evidence of hiding or attempted escape sufficient to show consciousness of guilt). While such circumstantial evidence of sanity may not have been sufficient to discharge the government's burden of proof had the defendant introduced expert testimony regarding knowledge of wrongfulness, *see United States v. Cooper,* 465 F.2d 451, 453 (9th Cir.1973), in the absence of any such testimony the circumstances of the offense are such that a rational jury could find Mostella understood his conduct to be wrongful. *Cf. United States v. Ingman,* 426 F.2d 973, 976 (9th Cir.1970) (quantity of evidence needed to prove sanity varies in each case).

Mostella next complains of numerous incidents of prosecutorial misconduct which he claims necessitate a new trial. These incidents include misstating the law, referring to the difficult responsibility of prosecuting, speculating that appellant was a "bad apple" not wanted by the Army, and denying that heroin use was a defense to crime, all in closing argument, and implying, based on facts outside the record, that Drs. Kessler and Rosenthal listened to the 911 tape at the same time. While the district court found the prosecutor's conduct had "come close" to warranting a new trial, he declined to declare a mistrial.

We will reverse a district court's refusal to grant a mistrial only if we find that it is

"more probable than not that the misconduct in question materially affected the jury's verdict." *United States v. Nadler,* 698 F.2d 995, 1001 (9th Cir.1983). In other words, the defendant must be "actually prejudiced" by the misconduct. *United States v. Spawr Optical Research, Inc.,* 685 F.2d 1076, 1082 (9th Cir.1982), *cert. denied,* 461 U.S. 905, 103 S.Ct. 1875, 76 L.Ed.2d 807 (1983). In determining whether the alleged incidents of misconduct had the requisite impact on the trial to justify reversal, we defer to the assessment of the district court since trial judges are generally better situated to evaluate the effect of any misconduct. *United States v. Flake,* 746 F.2d 535, 541 (9th Cir.1984), *cert. denied,* 469 U.S. 1225, 105 S.Ct. 1220, 84 L.Ed.2d 360 (1985); *see Nadler,* 698 F.2d at 1001 (appellate court gives "great deference" to trial court's handling of alleged misconduct at trial).

■ Here the district court took action to minimize the impact of misstatements in the prosecutor's closing argument. The court correctly instructed the jury on the insanity standard, told the jury to disregard any suggestion that appellant was a "bad apple," and admonished the jury not to speculate about the reason the Army report was issued. The court also informed the jury that heroin use may be a defense to a crime. While the court did not specifically address the prosecutor's statements about the difficulty of prosecuting, it is unlikely that these statements materially affected the jury's verdict.

■ The court also concluded that the prosecutor's reference to a fact outside the record, while improper, was not sufficiently prejudicial to merit a mistrial, particularly given the fact that the implication of defense counsel's argument—that Dr. Rosenthal had considered the tape prior to testifying, while Dr. Kessler had not—was somewhat misleading. The court did not abuse its discretion in so concluding.

Mostella's final argument is that excessive interference by the district judge deprived him of a fair trial. As examples of such interference, he cites the judge's inquiry into whether the robbery referred to in the 911 call actually occurred; the questioning of Ms. Jarmillo that elicited the response that Mostella had a "bad" reputation; the "sarcastic comments" directed at Dr. Rosenthal; the questioning of the psychiatric experts, which he claims undermined Dr. Rosenthal's testimony and bolstered Dr. Kessler's; and the sua sponte ruling that prevented him from asking Dr. Kessler about the reasonableness of Dr. Rosenthal's opinion. Mostella also objects to the sheer number of questions put by the district judge.

■ It is well established that a trial judge is more than a moderator or umpire. *United States v. McDonald,* 576 F.2d 1350, 1358 (9th Cir.), *cert. denied,* 439 U.S. 927, 99 S.Ct. 312, 58 L.Ed.2d 320 (1978); *Smith v. United States,* 305 F.2d 197, 205 (9th Cir.), *cert. denied,* 371 U.S. 890, 83 S.Ct. 190, 9 L.Ed.2d 124 (1962). It is entirely proper for him to participate in the examination of witnesses for the purpose of clarifying the evidence, confining counsel to evidentiary rulings, controlling the orderly presentation of the evidence, and preventing undue repetition of testimony. *United States v. Allsup,* 566 F.2d 68, 72 (9th Cir.1977); *United States v. Malcolm,* 475 F.2d 420, 427 (9th Cir.1973).

■ A trial judge's participation may, however, overstep the bounds of propriety and deprive the parties of a fair trial. This court will order a new trial, however, only if the record "discloses actual bias on the part of the trial judge or leaves the reviewing court with an abiding impression that the judge's remarks and questioning of witnesses projected to the jury an appearance of advocacy or partiality." *Shad v. Dean Witter Reynolds, Inc.,* 799 F.2d 525 (9th Cir.1986) (quoting *Warner v. Transamerica Insurance Co.,* 739 F.2d 1347, 1351 (8th Cir.1984)). *See also United States v. Mar-*

*ques,* 600 F.2d 742, 748 (9th Cir.1979) (new trial appropriate when judge's participation creates the appearance of giving aid to one party or another), *cert. denied,* 444 U.S. 1019, 100 S.Ct. 674, 62 L.Ed.2d 649 (1980).

■ In this case the trial judge's inquiry into the nonoccurrence of the robbery was intended to clarify the evidence and did not evidence partisanship. Similarly, the questions asked of Ms. Jarmillo were not partisan or prejudicial, particularly in light of the judge's specific instruction that the jury disregard the witness' characterization of the defendant's school reputation as "bad." Nor did the court's decision to exclude on its own motion direct testimony as to the reasonableness of Dr. Kessler's opinion show partisanship.

■ We are troubled by the trial judge's extensive questioning of Drs. Rosenthal and Kessler, particularly because it interrupted counsel's examination, but extensive nonpartisan questioning, without more, does not require reversal. *See United States v. Swacker,* 628 F.2d 1250, 1254 (9th Cir.1980). The court's questions, while probably excessive, did not give the appearance that the court believed the government's expert and disbelieved the defendant; moreover, the court expressly cautioned the jury not to infer from any of its questions that it had any views regarding the credibility of the witnesses or the guilt or innocence of the defendant. Absent the rather extreme overstepping of the proper judicial role which provided the grounds for reversal in cases such as *Allsup,* 566 F.2d at 72 (judge's questions created impression defendant had threatened witness), *United States v. Pena-Garcia,* 505 F.2d 964 (9th Cir.1974) (court made clear it felt the defendant was lying on the stand), and *United States v. Stephens,* 486 F.2d 915 (9th Cir.1973) (judge commented directly on the evidence and suggested defendant's guilt), we do not find the trial judge's intervention denied Mostella a fair trial.

AFFIRMED.